Michael S. Hiller, Esq.
**WEISS & HILLER, PC**
Attorneys for Defendant American
600 Madison Avenue
New York, New York 10022
(212) 319-4000
mhiller@weisshiller.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                        :

MORAN TOWING CORPORATION,      :

                     Plaintiff,    :

      - against -                :         11 Civ. 2636 (SLT)

                                          :

THE BARGE NEW JERSEY,           :
HER TACKLE, ETC. *IN REM*, THE     :       **DECLARATION IN SUPPORT**
BARGE NEW YORK, HER TACKLE,    :       **OF ORDER TO SHOW CAUSE**
ETC. *IN REM*, AND AMERICAN       :
STEVEDORING INC., *IN PERSONAM*,  :

                                          :

                     Defendants.   :

                                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

       **MICHAEL S. HILLER**, an attorney admitted to the practice of law before the Courts of the

State of New Jersey, pursuant to 28 U.S.C. §1746, declares under penalty of perjury that the

following is true and correct:

       1.      I am a managing principal of Weiss & Hiller, PC, attorneys for American

Stevedoring, Inc. ("American"). I submit this Declaration in Support of the Order to Show Cause

to vacate various orders and warrants pertaining to the Barges New York and New Jersey

(collectively, the "Barges") and to dismiss this action. The purposes of this Declaration are to: (i)

provide an overview of these papers; (ii) set forth a brief procedural history; and (iii) identify

Exhibits. The relevant facts are set forth in the affidavit of Sabato Catucci ("Sal's Affidavit").

**OVERVIEW**

2.      As reflected in the accompanying Memorandum of Law, American is entitled to the

relief requested in the Order to Show Cause because:

- the Barges are *publicly-owned vessels* not subject to maritime liens, arrests or seizures;

- assuming *arguendo* that publicly-owned vessels could be subjected to liens, arrests and seizures, the towing agreement ("Towing Agreement") annexed to the plaintiff's complaint ("Complaint"), pursuant to which plaintiff demands relief in this action, was signed *in 1998 by Moran Towing & Transportation Co., Inc., a company that went out of business in 1996*, not the plaintiff in this action; thus, neither plaintiff nor Moran Towing & Transportation Co., Inc., has standing to commence this action; the contract is unenforceable; there is no maritime contract sufficient to establish a basis for a maritime lien; and any supposed lien is, therefore, invalid; on this basis, American is also entitled to dismissal of this action; and

- even further assuming *arguendo* that publicly-owned vessels could be subject to liens, arrests and seizures, and that plaintiff were a party to the Towing Agreement pursuant to which it seeks relief in this action (neither of which is the case), by its terms, the Towing Agreement pertains only to the towing of the Barge New York (ex Boston Trader), not the Barge New Jersey (Exh. A), and accordingly, no maritime lien can be impressed, and no arrest or seizure can be effectuated, against the Barge New Jersey.

3.      In addition, principles of equity warrant lifting the orders of arrest and warrants

pending the Court's consideration of this Order to Show Cause.  In particular, the continued arrest

and seizure of the Barges would result in irreparable harm to American and to the general public;

the arrest and seizure were unlawful and never should have even been requested by plaintiff; and the

balance of equities weighs in favor of vacating the orders of arrest.

**PROCEDURAL HISTORY**

4.      On June 2, 2011, plaintiff Moran Towing Corporation ("MTC") commenced this

2

action, *inter alia, in rem* to arrest and condemn the Barges, alleging that sums for towing services rendered under the Towing Agreement were not paid within 45 days of invoice (Complaint, ¶9, Exh. B). The Barges, however, are owned by the Port Authority, not American or any other private party (Bareboat Charter Party Agreement, Exh. C at p. 1; Coast Guard Registry, Exh. D; Letter from Port Authority to plaintiff's counsel, dated June 3, 2011, Exh. E; Sal's Aff. ¶7). MTC's Complaint does not disclose that the Barges are owned by the Port Authority; rather, it alleges simply that the Barges are "chartered to, operated by and/or otherwise controlled by [American]" (Exh. B, ¶¶4-5).

5.      MTC annexed a copy of the Towing Agreement (Exh. A hereto) to the Complaint. In the Complaint (Exh. B hereto), MTC alleges that it has a maritime lien over and against both Barges pursuant to ¶11 of the Towing Agreement (Towing Agreement annexed to Complaint with notation from MTC and/or its lawyers, Exh. A hereto; *see also* Complaint, ¶6, Exh. B hereto). MTC is not a party or signatory to the Towing Agreement (Exh. A). ***Rather, the party and signatory to the Towing Agreement is Moran Towing & Transportation Co., Inc. ("MT&TCI")*** (Towing Agreement, Exh. A; *see also* Sal's Aff., ¶¶11-12). ***MT&TCI went out of business in 1996*** (Secretary of State Business Registration Database, Exh. F). ***The Towing Agreement is dated in 1998*** (Towing Agreement, Exh. A; *see also* Sal's Aff. ¶11).

6.      In the Complaint, MTC alleges that the parties entered into the Towing Agreement in 19**88** (Complaint, ¶6, Exh. B). MTC's allegation is false. The Towing Agreement clearly states that the parties entered into the Towing Agreement on November 25, 19**98, *two years after MT&TCI went out of business*** (Towing Agreement, p. 1 Exh. A).

7.      In the Complaint, MTC also alleges that the Towing Agreement provides for a lien to be impressed on ***both*** Barges (Complaint, ¶6, Exh. B). In this regard, the Complaint states:

3

On or about November 25, 1988, ASI and Moran entered into a contract [] whereby Moran agreed to provide towing services to the NEW YORK (ex BOSTON TRADER) *and other barges designated by ASI* ... (*Id.*).

8.       In fact, the Towing Agreement states simply that it pertains to a single barge - ex BOSTON TRADER (now, the Barge New York), or an equivalent *substitute* for that Barge -- not any and all *additional* barges designated by American.  In this regard, the Towing Agreement contains the following language:

Moran agrees to furnish the services of a tug [] which will satisfy the reasonable requirements of [American's] underwriter's surveyors for this towage service to tow BOSTON TRADER *or Equivalent substitute,* subject to a "walk round" survey ...

(Towing Agreement, p. 1).  The Towing Agreement does not make any generic reference to any "additional" barges, multiple barges, or any specific reference to the Barge New Jersey (*Id.*).

9.       Simultaneously with its filing of the Complaint, plaintiff submitted to the Court a proposed *Ex Parte* Order, directing the Clerk of the Court to issue Warrants of Arrest for the Barges (Exh. G).  The Court signed the *Ex Parte* Order ("June 2nd Arrest Order") on the same day it was submitted (*Id.*).  Shortly thereafter, the Clerk issued a Warrant of Arrest for the Barge New York, which was, at the time, located within the Eastern District of New York (Exh. H).

10.      On June 3, 2011, the Marshal arrested the New York at American's port facility at the Red Hook Container Terminal in Brooklyn ("RHCT").  At the time, the Barge New Jersey was located in American's other port facility in Newark, New Jersey ("Port Newark").  Owing to the critical role that the Barges play in the operation of American's business, American and plaintiff negotiated an agreement pursuant to which the Barge New Jersey would not be arrested, while American attempted to obtain a maritime bond.

11.      On June 7, 2011, one of plaintiff's tugboats ran the Barge New Jersey into a dock at

4

Port Newark, causing substantial damage to, *inter alia*, its hull (Exh. I).[1]  With the Barge New York under arrest at the RHCT and the Barge New Jersey damaged at Port Newark, American's business was brought to a halt (Sal's Aff. ¶18).  Because ships were scheduled to arrive and unload onto the Barges at the RHCT the following morning, the parties entered into a swap agreement, pursuant to which the Warrant of Arrest that had previously been served upon the Barge New York, which was fully operational, was lifted, and the Barge New Jersey, which plaintiff damaged, was returned to the RHCT (within the District) and placed under arrest while it was repaired at the dock (Order Releasing Vessel, Exh. I).

12.     Thereafter, American attempted to obtain the requisite financing for a bond. I was personally involved in such efforts.  Unfortunately, all of the sureties and banks with whom I spoke informed me that a maritime bond would be unavailable to American in the absence of cash collateral, collateral consisting of treasury bills, or posting of an irrevocable letter of credit (which the banks would not issue in the absence of cash collateral) in an amount equal to at least the full amount of the claim.  Because American does not have in excess of $1.3 Million in cash or other liquid securities available to post security, American was and is unable to obtain a maritime bond (Sal's Aff. ¶16).[2]

13.     Simultaneously with our efforts to obtain a bond, American, with MTC's knowledge, endeavored to obtain certain financing from the Port Authority.  Unfortunately, those negotiations terminated on June 30, 2011, when the Port Authority, without explanation, withdrew from

---

[1] Ironically, American may be entitled to impress a maritime lien against MTC for damaging its dock, and the Port Authority arguably is entitled to a lien against MTC for damaging its Barge.

[2] Several sureties insisted upon cash collateral at twice the amount of the claimed lien, $2.6 Million, in order to qualify for a bond.

discussions.[3]  On July 5, 2011, MTC filed an *ex parte* order to arrest the New York (Exh. K). American's business will be driven out of business (Sal's Aff. ¶18).  Accordingly, American has no choice but to proceed with this Order to Show Cause.  For the reasons reflected in the accompanying papers, the Court should grant it.

## EXHIBITS

14.    The following Exhibits are annexed hereto:

Exhibit A:    Towing Agreement

Exhibit B:    Complaint

Exhibit C:    Bareboat Charter Party Agreement

Exhibit D:    Coast Guard Registry

Exhibit E:    Letter from Port Authority to plaintiff's counsel, dated June 3, 2011

Exhibit F:    Secretary of State Business Registration Database

Exhibit G:    June 2nd *Ex Parte* Order

Exhibit H:    Warrant of Arrest for the Barge New York

Exhibit I:    Order Releasing Vessel

Exhibit J:    Tradewinds Magazine article

Exhibit K:    *Ex Parte* Order, July 5, 2011

**    *15.    This relief has not been previously requested in this or any other Court.*

---

[3]I have been representing American since November 2004 and, the Port Authority and American have been in virtually non-stop litigation since that time (and before).  As of this writing, the Port Authority has initiated no less than seven proceedings and other litigations to evict American and its affiliates from Port Authority properties, one of which is currently pending.  American and its affiliates have filed three Federal Maritime Commission proceedings against the Port Authority, one of which is still pending.

WHEREFORE, for the reasons stated, American is entitled to the relief set forth in the

Order to Show Cause.

Dated: New York, New York
       July 5, 2011

Michael S. Hiller